## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

In re

**STEVE CAVANAUGH LIMITED PARTNERSHIP**,

Debtor.

Case No. **08-61002-11**

## MEMORANDUM of DECISION

At Butte in said District this 29th day of April, 2009.

In this Chapter 11 bankruptcy, after due notice, a hearing was held April 14, 2009, in Butte on the Motion to Modify Stay filed by William and Melodie Koberg, Max and Marianne Johnson, Antoinette Meeds and Kenneth Dupuis (collectively referred to as "Koberg et al") on February 25, 2009, together with the Debtor's Objection thereto. Koberg el al was represented at the hearing by attorney Christy L. Brandon of Bigfork, Montana, and the Debtor was represented at the hearing by attorney James A. Patten of Billings, Montana. Koberg et al's Exhibit 1 and Debtor's Exhibit A were admitted into evidence without objection and testimony of expert witnesses Thomas G. Stevens and J. Michael Joki was heard, as was testimony from witnesses William "Bill" Koberg and Steve Cavanaugh. After review of the record and applicable law, the matter is ready for decision. For the reasons set forth below, Debtor's objection to the Motion to Modify Stay is overruled, and Koberg et al's Motion to Modify Stay is granted based on the appraisal prepared by certified Member of the Appraisal Institute ("MAI") appraiser Thomas G. Stevens ("Stevens"), Exhibit 1. This Memorandum of Decision sets forth the Court's findings of

1

fact and conclusions of law.

FACTS

The Debtor purchased 2 parcels of real estate several years ago and went through the Broadwater County subdivision process to divide the aforementioned real estate into 5 residential building sites, which residential lots comprise the Crimson Bluffs Subdivision.  Lot 1 of Crimson Bluffs Subdivision is the largest lot at 5 acres, while Lot 5 is the smallest lot at 2.06 acres.  Lot 4 is the second to smallest lot at 2.35 acres.  Lot 1 is the northern most lot and is bordered on the south by Lot 2.  The southeastern portion of Lot 2 is bordered by Lot 3 and the southwestern portion of Lot 2 is bordered by Lot 4.  Lot 5 is to the south of Lot 3 and the east of Lot 4.  Lots 1, 2 and 4 are bordered to the west by River Road.  The eastern border of Lots 1, 2, 3 and 5 are adjacent to a strip of land owned by the Bureau of Land Management ("BLM"), and the BLM land borders the Missouri River.  Accordingly, Lots 1, 2, 3 and 5 have direct access to the Missouri River via the BLM land.  Lot 4 has views of the Missouri River, and while it does not border the BLM land, Lot 4 has pedestrian access to the BLM land, and thus the Missouri River, via an easement across Lot 5.

Steve Cavanaugh testified that the Debtor previously sold Lot 2 to an engineering firm out of Missoula for $125,000.00 and sold Lot 5 to another engineering firm for $115,000.00. The Court presumes that Lots 2 and 5 were transferred to the respective engineering firms to cover engineering costs owed by the Debtor.  Debtor currently has Lots 1, 3 and 4 advertised for sale at the following prices:

| | |
|---|---|
| Lot 1 | $299,900 |
| Lot 3 | $239,900 |
| Lot 4 | $159,900 |

2

Per Koberg et al's Motion to Modify Stay, Koberg et al was owed $80,437.50 as of the Debtor's petition date.  Koberg et al has also incurred approximately $3,500.00 in post-petition attorney fees and costs.  Finally, the obligation owed by Debtor to Koberg el al accrues interest at the rate of 15% per year or approximately $30.83 per day.  Debtor's bankruptcy petition was filed on July 25, 2008, and thus, Debtor owes Koberg et al approximately $8,601.57 in post-petition interest through April 2009.  Based upon the foregoing numbers, Debtor will owe Koberg et al roughly $92,539.07 as of May 1, 2009.

**Joki Testimony & Appraisal – Exhibit A.**

J. Michael Joki ("Joki") is an MAI certified real estate appraiser who prepared Exhibit A, his appraisal of Lots 1, 3 and 4 in the Crimson Bluffs Subdivision.  Joki has testified in court as an expert appraiser and his qualifications are not in dispute.  Joki was contacted by the Debtors to perform an appraisal of Lots 1, 3 and 4 of the Crimson Bluffs Subdivision for purposes of litigation in this bankruptcy.  Joki states in the introduction of his appraisal that the market value of Lot 4 as of March 20, 2009, assuming a cash transaction, was $115,000, with a marketing period of 18 to 24 months.

Joki provides the following description of Lot 4 in his appraisal:

> Lot 4 is located at the intersection of River Road and Hombre Viejo Trail and is the southern most site in this subdivision.  This site is very irregular in its shape and it appears the best building site area is near the NWC where the roads intersect because this area has the most level topography.  The southern half of this site is steep down slopes and deep ravines which would be very difficult to develop.  This site lies farthest from the Missouri River of any of the lots in Crimson Bluffs Subdivision but because of its elevation still offers excellent views of the Missouri River, the City of Townsend and the surrounding valley.  Along the southern property boundary there is a 30' wide private access for the adjacent lot to the south.  From the very eastern corner of Lot 4 the 30' easement continues and is for BLM access and the residences within this subdivision to

3

access the strip of BLM land that lies adjacent to the Missouri River.

Joki maintains in his appraisal that "[s]ufficient data was found in the market to employ the Sales Comparison Approach to value." Joki examined five comparable properties. Three of the five comparable properties involved sales that took place between December 14, 2005, and August 13, 2007. The other two comparable properties are currently listed for sale.

Joki's appraisal includes a "Land Sale Adjustment Grid" that sets forth the subject property, consisting of Lots 1, 3 and 4, and then sets forth his five comparable properties. On the Grid, Joki describes whether the location, size, access, topography, views, Missouri River Proximity and Highest & Best Use of Debtors' Crimson Bluffs Subdivision lots is inferior, similar, slightly superior or superior to the comparable properties. Based upon the Grid, Joki prepared a written Sales Analysis, wherein he explains:

> The first three comparables are all from Missouri River Rendezvous Subdivision and although these are older sales they were the only sales found in a subdivision that lies directly on the Missouri River. These comparables have better access to the Missouri River but have lower elevation view and are much further from the City of Townsend. Comparable No. 1 is the most similar sale in terms of its size as compared to the subject lots and this sold for $110,000 in August, 2007. This lot is currently listed for $159,000. Comparables No. 2 and No. 3 are smaller sites and show adjusted prices of $112,614 and $120,625 respectively. Comparable No. 4 is a current listing from Missouri River Rendezvous Subdivision and is the most similar to the subject lots in terms of river proximity because of the strip of common area land that separates this lot from the river. Comparable No. 5 is a current listing that lies adjacent to the subject lots which is very similar in most of its physical aspects but really only has one good building area.

Like Comparable No. 5, Joki testified that Lot 4 has only one good building site near the northwest corner of Lot 4. Joki explains in his appraisal:

> Lot No. 4 has at least one good building area at its NWC. The rest of the site is a steep down slope and access to the Missouri River is only through the

4

access easement on the adjacent site.  Using the same analogy from above for Lot 3 it is my opinion the market value of Lot 4 is at the lower end of the value range shown by the comparables.  It is my opinion the current market value of Lot 4 is $115,000.

Joki's analogy for Lot 3 is:

Comparable No. 1 [is] very similar in size and indicates and [sic] adjusted price of $114,466.  Comparables No. 2 and No. 3 show adjusted prices of $112,614 and $120,625 respectively but both of these are smaller sites.  Comparable No. 4 is listed at $129,000 and is also a smaller site, but has a strip of land between the lot and the Missouri River.  Comparable No. 5 is a larger site from the immediate vicinity of Lot 3 but again only appears to have one good building site area.  Lot No. 3 appears to have several good building site areas[.]

**Stevens Testimony & Appraisal – Exhibit 1.**

Stevens is an MAI appraiser with thirty years of experience.  Stevens has testified in court as an expert appraiser and his qualifications are not in dispute.  Stevens described the real estate market in the area of Crimson Bluffs Subdivision as oversupplied.  Exhibit 1 is Stevens' appraisal of Lots 1, 3 and 4 of Crimson Bluffs Subdivision, and it states a final value for Lot 4 in the amount of $76,375 as of February 17, 2009, assuming a cash transaction and market exposure of at least 2 years.

Stevens determined that the cost and income capitalization approaches to valuation were not germane to the process and were thus not included in Exhibit 1.  Instead, Stevens, like Joki, utilized the sales comparison approach.  Stevens examined three comparable sales and two listings of residential tracts in Exhibit 1.  Stevens described his valuation approach as "quantitative," using the three best comparable sales and making adjustments based on his 30 plus years of experience.  He described Joki's approach as "qualitative" because Joki did not

make specific quantitative adjustments.[1]

Joki's decision to use a qualitative sale approach is undoubtedly attributed in part to the fact that the demand for lots such as those in the Crimson Bluffs Subdivision has dropped off dramatically. Stevens testified that 50 similar type lots sold in 2007 while only 10 similar type lots sold in 2008. There are currently in excess of 200 similar residential tracts on the market.

Stevens' appraisal includes a Land Sale Synopsis that sets forth the price per acre of his comparable properties. Stevens' then made upward and downward adjustments for changing market conditions, size price relationship of each parcel of property, distance from an urban center, topography, access, amenities, zoning and such. After comparing Lot 4 of Crimson Bluffs Subdivision to the five comparable properties, Stevens concluded that the range of adjusted values, on a per acre basis, for Lot 4, started at $26,850 and extended to $38,500 per acre. Stevens ultimately determined that a value of $32,500 per acre was appropriate for Lot 4 and thus assigned Lot 4 a value of $76,375.

APPLICABLE LAW

The commencement of a case under the Bankruptcy Code generally stays any and all proceedings against debtors. 11 U.S.C. § 362(a); *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir. 1990). The importance of the automatic stay is discussed in the legislative history of § 362:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the

---

[1] Joki agreed with Stevens on this point, stating that he uses a qualitative approach when he can't make appropriate adjustments in the current market. Joki could not find enough market data to make quantitative adjustments.

debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

H.R.Rep. No. 95-595, 95th Cong. 1st Sess. 340-42 (1977); S.Rep. No. 95-989, 95th Cong., 2d Sess. 54-55 (1978); *reprinted in* 1978 U.S.Code Cong. & Admin. News 5787 at 5840-41 and 6296-97.

The fundamental debtor protections afforded by § 362(a), however, are not absolute. 11 U.S.C. 362(d). As explained in § 362(d):

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay–
>
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest[.]

Except for the issue of a debtor's equity in property, in a proceeding on a motion to modify the automatic stay, the debtor has the burden of proof to show that the stay should not be modified or annulled. *In re National Envtl. Waste Corp.*, 191 B.R. 832, 836 (Bankr. C.D.Cal. 1996), *aff'd*, 129 F.3d 1052 (9th Cir. 1997); *In re Syed*, 238 B.R. 126, 132 (Bankr. N.D.Ill. 1999); *In re Sauk Steel Co., Inc.*, 133 B.R. 431, 436 (Bankr. N.D.Ill. 1991); 11 U.S.C. § 362(g).

As noted above, § 362(d)(1) allows a court to grant relief from the automatic stay for cause, "including the lack of adequate protection." What constitutes adequate protection for purposes of § 362(d)(1) is not defined in the Bankruptcy Code. However, "11 U.S.C. § 361 sets forth three non-exclusive examples of what may constitute adequate protection: 1) periodic cash payments equivalent to decrease in value, 2) an additional or replacement lien on other property, or 3) other relief that provides the indubitable equivalent." *Pistole v. Mellor (In re Mellor)*, 734 F.2d 1396, 1400 (9th Cir. 1984). This Court discussed the concept of adequate protection in *In re*

*WRB West Associates Joint Venture*, 106 B.R. 215, 219-20 (Bankr. D.Mont. 1989):

> In a classic sense, adequate protection payments should be applied to compensate a secured creditor for any diminution in the value of collateral as a result of use, depreciation, destruction or other caused reduction in value. 11 U.S.C. § 361; 11 U.S.C. § 363(e); *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd., (In re Timbers of Inwood Forest Assocs., Ltd.)*, 793 F.2d 1380, 1412 n. 57 (5th Cir.1986) (collecting supporting cases), *aff'd, United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, [484] U.S. [365], 108 S.Ct. 626, 98 L.Ed.2d 740 (1988); *General Elec. Mortgage Corp. v. South Village, Inc. (In re South Village, Inc.)*, 25 B.R. 987, 994 (Bkrtcy.D.Utah 1982) ('adequate protection was protection ... against depreciation of the collateral when it erodes the allowed secured claim.')."

[*Matter of Kain*,86 B.R. 506, 511, 513 (Bankr. W.D. Mich. 1988)]

On the issue of adequate protection required by § 363(d) and (e), *In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir.1987) holds:

> "In recognition of the powers created in bankruptcy law to adjust debts and creditors' interest, Congress realized the need to protect creditors from unfair treatment. Hence, it codified the concept of adequate protection into the several aggressive remedies available to debtors and bankruptcy trustees. *See 2 Collier on Bankruptcy* ¶ 361.01[1] (15th ed. 1979). The whole purpose in providing adequate protection for a creditor is to insure that the creditor receives the value for which the creditor bargained prebankruptcy. House Rep. No. 95-595, 95 Cong., 2d Sess. 53, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6295. In determining these values, the courts have considered 'adequate protection' a concept which is to be decided flexibly on the proverbial 'case-by-case' basis. *In re Martin*, 761 F.2d 472 (8th Cir.1985); *In re Monroe Park*, 17 B.R. 934 (D.C.Del.1982). Since 'value' is the linchpin of adequate protection, and since value is a function of many factual variables, it logically follows that adequate protection is a question of fact. *In re Martin*, 761 F.2d at 472; *In re George Ruggiere Chrysler-Plymouth, Inc.*, 727 F.2d 1017 (11th Cir.1984); *In re Bank Hapoalim B.M., Chicago Branch v. E.L.I.*, Ltd., 42 B.R. 376 (D.C.N.D.Ill.1984); *Brookfield Production Credit Association v. Borron*, 36 B.R. 445 (D.C.E.D.Mo.1983), *aff'd*, 738 F.2d 951 (8th Cir.1984)."

In *Mellor* the Ninth Circuit Court of Appeals recognized that an "equity cushion", while

not specifically mentioned in the Bankruptcy Code, is a common form of adequate protection:

> [I]t is the classic form of protection for a secured debt justifying the restraint of lien enforcement by a bankruptcy court. *In re Curtis*, 9 B.R. at 112. In fact, it has been held that the existence of an equity cushion, standing alone, can provide adequate protection. *In re San Clemente Estates*, 5 B.R. 605, 610 (B.Ct.S.D.Cal.1980); *In re Tucker*, 5 B.R. 180, 182 (B.Ct.S.D.N.Y.1980); 2 COLLIER ON BANKRUPTCY, § 361.02[3] at 361-9; (15th ed. 1979). A sufficient equity cushion has been found to exist although not a single mortgage payment had been made. *In re Curtis*, 9 B.R. at 111.

*Id*. *See also In re Interstate Distrib. Co., Inc.*, 13 Mont. B.R. 86, 89-10 (Recognizing that an equity cushion is the classic form of protection for a secured debt, and its existence, standing alone, can provide adequate protection under the Bankruptcy Code.). The *Mellor* Court defined the term "equity cushion" as "the value in the property, above the  amount owed to the creditor with a secured claim, that will shield that interest from loss due to any decrease in the value of the property during time the automatic stay remains in effect." *Id.* at 1400 n.2.

DISCUSSION

The instant case presents the opinions on the value of Lot 4 by two MAI certified appraisers, Stevens and Joki.  As between Joki's and Stevens' appraisals, Exhibits A and 1, the Court first notes that Stevens and Joki were both credible witnesses.  However, after listening to Stevens and Joki testify and after carefully reviewing their appraisal reports, the Court concludes that Stevens' appraisal is more persuasive, more accurately reflects current market conditions and is thus entitled to greater weight.

Joki and Stevens both used the sales comparison approach and both considered five comparable properties.  Stevens and Joki also both agreed that Lot 4 has, given its topography, only one good building site.  The other lots in the Crimson Bluffs Subdivision have multiple

9

building sites.  Stevens adjusted the value of Lot 4 downward because of its orientation and the

because of the single building site, which Stevens testified was near the intersection of two

gravel roads, and farther away from the Missouri River.  Joki did not think that Lot 4 required a

downward adjustment in price because of the location or orientation of its single building site.

Stevens also testified that he thought buyers would perceive the location of Lots 1 and 3,

which have access to the Missouri River via the BLM land, as superior to that of Lot 4, which

only has access to the BLM land via an easement across Lot 5.  Joki did not consider River

access a negative factor when he valued Lot 4.

Joki testified that he did not think that the value of Lot 4 should be much less than the

value of Lots 1 and 3.  Joki's testimony seems in direct conflict with the beliefs of the Debtor.

Debtor has Lot 4 listed for sale at a price of $159,000, which price is almost one-half the

$299,900 listing price of Lot 1.  Moreover, the Court agrees with Stevens that location,

orientation and access to the Missouri River do have a psychological impact on buyers.

Furthermore, Stevens testified that real estate appreciation stopped in 2007 and the 2009 real

estate market is still stagnant.  Given the foregoing, combined with Stevens testimony that the

real estate market in Broadwater County is currently saturated, the Court finds that Stevens'

opinion concerning the value of Debtor's Lot 4 is entitled to greater weight, and thus, the Court

adopts Stevens' valuation estimate of $76,375 for Lot 4.

Based upon such valuation, Koberg el al is not adequately protected, particularly as

Debtor owes Koberg et al approximately $92,000.  Absent an equity cushion or some type of

adequate protection payment, which the Debtor has not proposed, the Court has no alternative

but to grant Koberg et al relief from the automatic stay.  For the reasons discussed above, the

10

Court will enter a separate order providing as follows,

IT IS ORDERED that the stay afforded by § 362(a) of the Bankruptcy Code is modified to permit William and Melodie Koberg, Max and Marianne Johnson, Antoinette Meeds and Kenneth Dupuis to pursue their non bankruptcy remedies against the following property of the estate:

Lot 4 of Crimson Bluff Estates, recorded in Book 2 of Plats, page 137, as described in the Montana Trust Indenture recorded 11/27/2007, Document No. 157403m Broadwater County, Montana.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

11